## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RENCANA LLC d/b/a CORE REFORM PILATES, | ) | 3:20-CV-00611 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SENTINEL INSURANCE COMPANY, LTD., | ) | May 27, 2022 |
| *Defendant*. | ) | |

### <u>RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

Plaintiff Rencana LLC d/b/a Core Reform Pilates has brought this action against Defendant Sentinel Insurance Company, Ltd. seeking a declaratory judgment that Plaintiff is entitled to coverage under an insurance policy (the "Policy") underwritten by Defendant for business interruption losses related to the COVID-19 pandemic. The Second Amended Complaint ("SAC") consists of one count for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

Defendant has moved to dismiss Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Policy does not cover the losses Plaintiff claims, in large part due to a "Virus Exclusion" in the Policy. Plaintiff argues that its claimed losses are covered by the Policy, and that the Virus Exclusion is inapplicable. For the reasons described below, the Court agrees with Defendant that Plaintiff has failed to state a claim upon which relief can be granted because the Virus Exclusion unambiguously excludes the losses Plaintiff claims. Defendant's motion to dismiss the SAC is therefore GRANTED.

# I.    FACTUAL BACKGROUND

On May 4, 2020, Plaintiff, along with former plaintiff Irvine Company LLC, initiated this action by filing their original complaint against Defendant and former defendant Hartford Financial Services Group, Inc.[1]  ECF No. 1.  Following the filing of an amended complaint and an answer by Defendant, Plaintiff filed the SAC on May 17, 2021.  ECF No. 41.

The SAC alleges the following facts, which the Court accepts as true for purposes of Defendant's motion to dismiss.  Plaintiff, a California limited liability company, owns and operates two Pilates schools in California.  SAC, ECF No. 41, ¶ 8.  In or around April of 2019, Defendant underwrote an insurance policy issued to Plaintiff, which included "coverage for business interruption losses incurred by Plaintiff from June 18, 2019 through June 18, 2020."  *Id.* ¶¶ 9–10; *see* ECF No. 41-1 at 11.  The Policy also included "additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage."  SAC ¶ 13.  The following provisions of the Policy, which Plaintiff attaches to the SAC, *see* ECF No. 41-1, are relevant to Defendant's motion.

- ***Covered Causes of Loss***:  The Policy includes coverage "for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss."  *Id.* at 32.  "Covered Causes of Loss" are defined as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is otherwise excluded or limited by the Policy.  *Id.* at 33.

- ***Business Income Coverage***:  The Policy provides "Business Income" coverage under a provision stating, in part, that Defendant "will pay for the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary suspension of [Plaintiff's] 'operations' during the 'period of restoration[.]'"  *Id.* at 41.  This provision further provides that "[t]he suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss."  *Id.*

---

[1] Irvine Company LLC and Hartford Financial Services Group, Inc. were subsequently terminated from this action.

- ***Extra Expense Coverage***:  The Policy provides "Extra Expense" coverage under a provision stating, in part, that Defendant "will pay reasonable and necessary Extra Expense [Plaintiff] incur[s] during the 'period of restoration' that [Plaintiff] would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss." *Id.*

- ***Civil Authority Coverage***:  The Policy provides "Civil Authority" coverage under a provision stating, in part:  "This insurance is extended to apply to the actual loss of Business Income [Plaintiff] sustain[s] when access to [its] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [Plaintiff's] 'scheduled premises[.]'" *Id.* at 42.

- ***Virus Exclusion***:  The Policy contains an endorsement titled "LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE."  *Id.* at 122.  Within this endorsement is a section titled "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus."  *Id.*  This section provides, in part:  "[Defendant] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus."  *Id.*  This section further provides that "[t]his exclusion applies whether or not the loss event results in widespread damage or affects a substantial area."  *Id.*

According to the SAC, Plaintiff's "schools and accompanying retail stores have suffered business loss" due to the COVID-19 pandemic and the resulting "state and local government orders ('Civil Authority Orders') mandating that all non-essential in-store businesses must shut down on March 16, 2020."  SAC ¶ 2.  Plaintiff alleges that it has suffered "direct physical loss of or damage" to its property due to the COVID-19 pandemic because COVID-19:  made its schools and stores "unusable," intruded upon its property, damaged its property, prevented physical access to and use of the property, and caused a suspension of business operations at the property.  *Id.* ¶ 105.  Plaintiff further alleges that "the coronavirus and COVID-19,[2] and the measures required to prevent their spread from surfaces and materials used by the Plaintiff, cause physical loss or damage to property"

---

[2] For ease of reference, the Court will refer to COVID-19 as a virus.

because the virus can persist on objects even after cleaning and because Plaintiff "was required to physically alter" its businesses and "drastically reduce operations, and even to close entirely, to comply with the Civil Authority Orders and ensure the safety of employees and customers." *Id.* ¶¶ 74, 76, 107.   Plaintiff further alleges that access to its business was "prohibited" by civil authority orders and that there was "physical impact" not only in Plaintiff's premises, but also in the surrounding area, "in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness." *Id.* ¶¶ 101, 103.

The SAC further alleges that, although the Policy includes a "virus or bacteria exclusion," the exclusion "was never intended by . . . Defendant to pertain to a pandemic like the present global COVID-19 Pandemic because . . . Defendant define[s] 'virus' and 'pandemic' as used in [its] policies differently than how those terms might be normally used." *Id.* ¶ 28.   Plaintiff also claims that the Virus Exclusion "does not apply to the closure of Plaintiff's businesses as a result of an order issued by a Civil Authority due to the COVID-19 pandemic." *Id.* ¶ 20.

Plaintiff asserts that it submitted a claim to Defendant "for losses incurred while the Policy was in effect." *Id.* ¶ 12.   In response, Defendant "rejected Plaintiff's business loss and business interruption claims and other claims, contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff is not purportedly entitled to coverage for the losses and damages claimed." *Id.*   Accordingly, Plaintiff seeks "declaratory relief that its business is covered for all business losses that have been incurred." *Id.* ¶ 4. Additional allegations from the SAC are discussed where relevant throughout the remainder of this ruling.

II.     **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For purposes of this examination, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Accordingly, courts in this Circuit routinely consider insurance policies attached to, or referenced in, complaints. *See, e.g.*, *Great Meadow Cafe v. Cincinnati Ins. Co.*, No. 3:21-CV-00661 (KAD), 2022 WL 813796, at *1 (D. Conn. Mar. 17, 2022) ("When deciding a motion to dismiss, a district court may consider documents attached to the complaint or incorporated by reference into the complaint[,] including an insurance policy referenced in the complaint." (alteration in original)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic

recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

## III.   DISCUSSION

### A.  Principles for Interpreting Insurance Contracts

As a preliminary matter, the Court assumes that California law applies here.  Plaintiff notes that the parties agree that California law applies.  ECF No. 43 at 4 n.3 ("Plaintiff and Defendant agree that California law applies to Plaintiff's claims.").  While Defendant includes the law of both California and Connecticut in its briefing, it does not object to the application of California law; indeed, Defendant states that, if there were a conflict between the law of the two states, Connecticut's choice of law principles would require application of California law.  ECF No. 42-1 at 16.  The Court will thus assume that California law applies here.[3]

"Under California law, an insured has the initial burden of establishing that the occurrence forming the basis of its claim is within the basic scope of insurance coverage."  *Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 545 F. Supp. 3d 820, 833 (C.D. Cal. 2021) (internal quotation marks omitted) (quoting *Aydin Corp. v. First State Ins. Co.*, 77 Cal. Rptr. 2d 537, 539 (Cal. 1998)).  "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded."  *Aydin Corp.*, 77 Cal. Rptr. 2d at 539.  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation

---

[3] By arguing for the application of California law in their briefing, the parties are deemed to have given implied consent to the application of California law.  *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000); *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 153 n.11 (2d Cir. 2017); *Conte v. U.S. All. Fed. Credit Union*, 303 F. Supp. 2d 220, 226 (D. Conn. 2004).

apply." *Madera Grp., LLC*, 545 F. Supp. 3d at 833.  Accordingly, "the terms of an insurance policy must be given their 'ordinary and popular sense,' and if the policy language is 'clear and explicit,' it governs."  *Phan v. Nationwide Gen. Ins. Co.*, No. CV 20-7616-MWF (JPRx), 2021 WL 609845, at *2 (C.D. Cal. Feb. 1, 2021) (citing, in part, Cal. Civ. Code § 1638); *see also Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999).  A policy provision is ambiguous "*only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole."  *Palmer*, 21 Cal. 4th at 1115 (emphasis in original).

Under California law, "[a]s with the other provisions of an insurance policy, '[t]he interpretation of an exclusionary clause is an issue of law.'"  *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1240 (C.D. Cal. 2020) (second alteration in original) (quoting *Marquez Knolls Prop. Owners Assoc., Inc. v. Exec. Risk Indem., Inc.*, 153 Cal. App. 4th 228, 233–34 (2007)).  "To be enforceable, a coverage exclusion must be 'conspicuous, plain and clear.'"  *Id.* (quoting *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004)).

### B.  The Virus Exclusion Bars Coverage for Plaintiff's Claimed Losses

Turning to the substance of Plaintiff's allegations, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted.  Defendant advances three arguments why the SAC should be dismissed.  First, Defendant argues that the Virus Exclusion bars coverage.  Second, Defendant contends that Plaintiff has not alleged a direct physical loss to property, as required for coverage.  Third, Defendant asserts that Plaintiff cannot state a claim for Civil Authority coverage.

The Court notes that dozens of courts have by now considered whether business loss insurance policies cover losses associated with COVID-19-related closures.  All but a handful of

outlier cases applying California law hold that the COVID-19 pandemic does not cause "physical loss" or "physical damage" to property and that the government orders referenced in the SAC in the present case do not give rise to the "civil authority" coverage in the Policy.[4]  Ultimately, the Court need not decide these issues because it holds that, even assuming that Plaintiff's claim would fall under the Business Income or Civil Authority coverage of the Policy, the Virus Exclusion clearly precludes coverage.  *See Founder Inst. Inc. v. Hartford Fire Ins. Co.*, 497 F. Supp. 3d 678, 678 (N.D. Cal. 2020) (assuming "for argument's sake only" that "the claim for loss of business income due to the shelter-in-place orders would otherwise be covered by [the] insurance policy," and then dismissing complaint because "the claim clearly falls within the virus exclusion").

The Virus Exclusion provides that Defendant "will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus."  ECF No. 41-1 at 122.  The Virus Exclusion applies to each of the types of coverage Plaintiff claims.  *Id.* (indicating that the Virus Exclusion modifies the "Special Property Coverage Form," which

---

[4] *See, e.g.*, *Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.*, No. B310499, 2022 WL 1182918, at *4 (Cal. Ct. App. Apr. 21, 2022) (reviewing development of California case law and persuasive authority and stating:  "At this point, there is no real dispute. Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic."); *see also Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 286 Cal. Rptr. 3d 576, 590 (Cal. Ct. App. 2021), *review denied* (Mar. 9, 2022) ("[W]e conclude that despite [the plaintiff's] allegation that the COVID-19 virus was present on its premises, it has not identified any direct physical damage to property that caused it to suspend its operations."); *id.* at 596 ("[T]he Orders make clear that they were issued in an attempt to prevent the spread of the COVID-19 virus. The Orders give no indication that they were issued 'due to direct physical loss of or damage to' any property. Therefore, the Orders did not give rise to Civil Authority coverage."); *United Talent Agency v. Vigilant Ins. Co.*, No. B314242, 2022 WL 1198011, at *8 (Cal. Ct. App. Apr. 22, 2022) ("We therefore follow the reasoning of *Inns-by-the-Sea* and similar cases in acknowledging 'the generally recognized principle in the context of first party property insurance that mere loss of use of physical property to generate business income, without any other physical impact on the property, does not give rise to coverage for direct physical loss.'"); *id.* at *12 ("Closure orders across the country were issued in response to the public health crisis arising from the pandemic, not as 'the direct result of' damage to property near [the plaintiff's]."); *Barbizon Sch. of S.F., Inc. v. Sentinel Ins. Co. Ltd.*, 530 F. Supp. 3d 879, 891 (N.D. Cal. 2021) ("[T]he government orders were issued to prevent the spread of COVID-19, not in response to property damage.").

includes Business Income, Extra Expense, and Civil Authority coverage).  Accordingly, the Court must decide whether the Virus Exclusion unambiguously applies to Plaintiff's losses and therefore precludes coverage under the Policy.  The Court finds that it does, and as a result, dismisses the SAC.

### 1.  The Virus Exclusion Is Enforceable

To begin, the Court finds that the Virus Exclusion is conspicuous, plain, and clear, and therefore enforceable.  "A limitation on coverage is plain and clear when it is communicated in language understandable by the average layperson."  *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1241 (citing *Nat'l Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal. App. 3d 452, 457 (1990)).  In addition, "[a]n exclusion 'must be placed and printed so that it will attract the reader's attention.'"  *Id.* (quoting *Haynes*, 32 Cal. 4th at 1204).  Here, the Virus Exclusion is within an endorsement to the Policy titled, in bold font, "LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE."  ECF No. 41 at 122.  Above the title is the bold text "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  *Id.*  Thus, it seems clear that the exclusion would attract a reader's attention.

Plaintiff does not contend that the Virus Exclusion is unenforceable because it is not conspicuous, plain, and clear, but argues generally that the Policy "is not a simple contract that can easily be understood by a lay person."  ECF No. 43 at 8.  Plaintiff fails to specify which part of the Virus Exclusion the average layperson could not understand.  Plaintiff's contention that business interruption insurance contracts are often long and complex does not mean that their provisions are unclear.  *See W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1241 (finding virus exclusion was "plainly stated in language free of jargon").  In this instance, the Virus Exclusion is

conspicuous, plain, and clear.  Accordingly, Plaintiff's implication that it could not be expected to understand the application of the Virus Exclusion is unavailing.

### 2.   The Virus Exclusion Unambiguously Applies to Plaintiff's Claims

The Court next finds that the Virus Exclusion unambiguously applies to Plaintiff's claims. "The plain language of the insurance policy governs its interpretation."  *Boxed Foods Co. v. Cal. Capital Ins. Co.*, 497 F. Supp. 3d 516, 520 (N.D. Cal. 2020).  "A policy provision is ambiguous if it is 'capable of two or more constructions, both of which are reasonable.'"  *Id.* (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)).  "If the language is ambiguous or unclear, 'it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.'"  *Id.*  However, "[c]ourts should 'not strain to create an ambiguity where none exists.'"  *Id.* (quoting *Waller*, 11 Cal. 4th at 18–19).

To begin, the Virus Exclusion is unambiguous.  The exclusion states that Defendant "will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus."  ECF No. 41-1 at 122.  Plaintiff's primary argument that the text of the Virus Exclusion is ambiguous rests on a citation to *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, 489 F. Supp. 3d 1297, 1301–03 (M.D. Fla. 2020), in which a district court applying Florida law denied a motion to dismiss a complaint for COVID-19-related business insurance coverage based, in part, on the purported ambiguity of a virus exclusion.  The court found, with minimal analysis, that a virus exclusion identical to the exclusion at issue here was ambiguous because "[d]enying coverage for losses stemming from COVID-19 . . . does not logically align with the grouping of the virus exclusion with the other pollutants [i.e., fungi, wet rot, dry rot, and bacteria] such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses."  *Id.* at 1302.  The court found persuasive the "unique

10

circumstances of the effect COVID-19 has had on our society" and held that, without binding case law on the "effects of COVID-19 on insurance contracts['] virus exclusions," the plaintiff's complaint could not be dismissed.  *Id.* at 1302–03.

The Court is not persuaded by the holding in *Urogynecology Specialist*.  In the Court's view, the plain text of the Virus Exclusion unambiguously excludes losses caused by the COVID-19 virus.  The placement of the word "virus" among other "pollutants," as *Urogynecology Specialist* labeled them, does not cause the Court concern.  At the outset, "[t]hat a word may be known by the company it keeps is . . . not an invariable rule, for the word may have a character of its own not to be submerged by its association." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923).  Here, the Virus Exclusion provides five independent bases for exclusion, separated by the disjunctive "or."  Accordingly, "'virus' has a clear meaning of its own, not obscured by being placed next to the other terms." *Leal, Inc. v. Twin City Fire Ins. Co.*, No. 3:20-CV-00917 (AVC), 2021 WL 5370091, at *5 (D. Conn. Nov. 10, 2021) (applying Ohio and Connecticut law); *see also Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 508 F. Supp. 3d 575, 582 (N.D. Cal. 2020) ("[G]iven the plain meaning of the Exclusion, which lists, in the disjunctive, four independent bases for exclusion, one of which is 'virus(es),' the Court finds coverage for losses caused directly or indirectly by COVID-19 is expressly excluded.").  Moreover, even looking to the other terms in the Virus Exclusion's list, the terms are distinguishable in such a manner that little definitive guidance can be gleaned about the meaning of "virus" from their grouping.  *See Leal, Inc.*, 2021 WL 5370091, at *5 ("Fungi and viruses are inherently different, take different forms, and behave differently in the environment.").

Plaintiff's secondary argument that a reasonable insured would understand the exclusion to apply only to contaminants that "manifest, grow, and spread within the property due to a lack

of cleanliness," *see* ECF No. 43 at 33, is supported neither by the plain language of the exclusion nor by citation to any authority.  Nothing in the text of the exclusion suggests that it is limited to viruses that develop or arise from within the insured premises.  *See Franklin EWC, Inc. v. Hartford Fin. Servs Grp., Inc. ("Franklin II")*, 506 F. Supp. 3d 854, 858 (N.D. Cal. 2020).  In any event, the SAC itself suggests that cleaning is at least one way to mitigate the spread of COVID-19 on a premises, which implies that it can be spread at least in part due to a lack of cleanliness (among other ways).  SAC ¶ 67 (noting that the Centers for Disease Control and Prevention have recommended routine cleaning and disinfecting of frequently touched surfaces as a way to slow the spread of COVID-19); *id.* ¶ 58 (asserting that "[i]t is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces" of the properties); *id.* ¶¶ 71–74 (discussing effective cleaning protocol).  The allegations pertaining to cleaning as one method of mitigating the COVID-19 virus's spread defeat Plaintiff's argument that the Virus Exclusion does not apply because it excludes only those viruses that propagate within the property due to a lack of cleanliness.

The Court also rejects Plaintiff's contention that the Virus Exclusion was not intended to pertain to a pandemic like the COVID-19 pandemic, *see* SAC ¶ 28.  First, the Virus Exclusion specifically states that "[t]his exclusion applies whether or not the loss event results in widespread damage or affects a substantial area."  ECF No. 41-1 at 122.  A pandemic is a virus that affects a substantial area.  *See Pandemic*, Merriam-Webster (online ed.), http://www.merriam-webster.com/ dictionary/pandemic (defining "pandemic" as "an outbreak of disease that occurs over a wide geographic area") (last visited May 18, 2022).  Moreover, the Court agrees with the analysis of other courts that have rejected Plaintiff's argument.  For example, in *West Coast Hotel*, the court rejected the plaintiffs' argument that "ambiguity exist[ed] because a pandemic is a social health

crisis that . . . is much more than just a simple virus." *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1242 (internal quotation marks omitted) (cleaned up). In doing so, the court stated that the plaintiffs' interpretation "defies the plain and unambiguous text of the Policy and is 'akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire.'" *Id.* Similarly, in *Boxed Foods*, the court stated: "Even if the Court accepts Plaintiffs' distinction between a stand-alone virus and a pandemic . . . the Virus Exclusion is only subject to one reasonable interpretation: that coverage does not extend to any claim premised on virus-induced damage, regardless of the virus's magnitude." *Id.* The Court finds that the reasoning of *West Coast Hotel* and *Boxed Foods* applies to this case. *See also Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 514 F. Supp. 3d 1197, 1207–08 (C.D. Cal. 2021), *app'l dismissed*, No. 21-55100, 2021 WL 6881068 (9th Cir. Nov. 12, 2021) (noting that "courts applying similar virus exclusions to COVID-19 have consistently found" that such virus exclusions apply "[w]hether a global pandemic or a single infection" is at issue). To find the Virus Exclusion ambiguous with respect to losses caused by the COVID-19 pandemic would be to strain to create ambiguity where ambiguity does not exist.

In light of the foregoing, and because Plaintiff asserts that its losses were caused by the COVID-19 pandemic, the Virus Exclusion precludes Plaintiff's claims. As noted above, the exclusion states that Defendant "will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus." ECF No. 41-1 at 122. It is not debatable that the novel coronavirus that causes COVID-19 is a virus. Plaintiff's alleged losses are, at bottom, losses caused, "directly or indirectly" by the COVID-19 virus. The SAC contains more than thirty paragraphs of allegations related to the COVID-19 pandemic and its effects, *see* SAC ¶¶ 52–85, and then notes that Plaintiff's schools and stores had an "ever-present

risk" of contamination due to COVID-19 because of the number of people who cycle through them, *id.* ¶ 99, and that, on information and belief, COVID-19 was in Plaintiff's schools and stores before they were shut down, *id.* ¶ 104. Plaintiff alleges that the COVID-19 pandemic has caused physical loss to Plaintiff's business because Plaintiff "was required to physically alter" its schools and stores and "drastically reduce operations, and even to close entirely." *Id.* ¶¶ 106–07. These allegations suggest that Plaintiff's losses were caused directly by the "[p]resence, growth, proliferation, spread, or any activity of" the coronavirus.

Even if Plaintiff's losses were not caused directly by the virus, they were at the very least caused indirectly by it. Plaintiff argues that the Virus Exclusion does not apply because Plaintiff's losses "were not solely caused by a virus," but were also "caused by the entry of civil authority orders to mitigate the spread of COVID-19." SAC ¶ 46. This allegation concedes that the virus was at least *a* cause of the losses. Additionally, the Court finds that losses caused by the institution of civil authority shelter-in-place orders are still indirectly caused by the virus, as those orders would not have been imposed absent the threat from the virus. The SAC itself traces the civil authority orders to "the presence of the coronavirus throughout the state," and recognizes that the civil authority orders requiring people to stay at home "as a result of COVID-19" rendered Plaintiff's schools and stores unable to operate. *Id.* ¶¶ 89–91. This is not, as Plaintiff argues, an "unlimited" view of causation, *see* ECF No. 43 at 32. Rather, there is simply no question that the COVID-19 virus directly *or indirectly* caused Plaintiff's losses and that the Virus Exclusion therefore precludes Plaintiff's claims. *See Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 908 ("*Franklin I*") (N.D. Cal. 2020) (rejecting as "[n]onsense" the similar theory that the plaintiffs' "loss [was] created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply").

Indeed, several courts applying California law have dismissed claims based on provisions similar to the Virus Exclusion here.  *See, e.g.*, *id.* at 909 ("The complaint unambiguously alleges that any Covered Cause of Loss was directly or indirectly caused by COVID-19.  Defendants have therefore met their burden of proving that the Virus Exclusion applies."); *Founder Inst. Inc.*, 497 F. Supp. 3d at 678 ("Assuming—for argument's sake only—that the claim for loss of business income due to the shelter-in-place orders would otherwise be covered by [the] insurance policy, the claim clearly falls within the virus exclusion."); *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1242 ("As Plaintiffs are unable to circumvent the Virus Exclusion, Plaintiffs' Complaint fails to state a legally cognizable claim for relief."); *see also Baldwin Acad., Inc. v. Markel Ins. Co.*, No. 3:20-CV-02004-H-AGS, 2020 WL 7488945, at \*3 (S.D. Cal. Dec. 21, 2020) (noting that cases "involv[ing] the applicability of 'Business Income' and 'Civil Authority' insurance coverage to business shutdowns caused by COVID-19, as well as 'Virus Exclusion' provisions" had "uniformly rejected attempts to claim coverage for business losses resulting from the COVID-19 pandemic under Business Income and Civil Authority provisions").  The allegations in the SAC in this case mandate the same result.[5]

### 3.   *The "Reasonable Expectations Doctrine" Does Not Apply*

In an attempt to save its claims, Plaintiff argues that the "reasonable expectations doctrine" precludes dismissal.  The Court finds this argument unavailing.  The reasonable expectations doctrine "is triggered only where a policy provision or exclusion is *uncertain* or *ambiguous*, in which case the court's inquiry would turn to what a reasonable purchaser of the policy would

---

[5] Plaintiff cites to *Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Insurance Co.*, 538 F. Supp. 3d 457 (E.D. Pa. 2021), which reached a different conclusion under California law by applying the doctrine of efficient proximate cause.  The parties have not argued that the doctrine of efficient proximate cause is at issue here.  In any event, the doctrine would not apply where, as here, the SAC alleges that the civil authority orders were caused by COVID-19.  *See* SAC ¶ 20 (alleging that civil authority orders were "issued . . . due to the COVID-19 pandemic"); *id.* ¶ 46 ("Plaintiff's losses were also caused by the entry of civil authority orders *to mitigate the spread of COVID-19*." (emphasis added)).  *See also Madera Grp.*, 545 F. Supp. 3d at 838 (distinguishing *Susan Spath Hegedus*).

expect." *Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 116 Cal. Rptr. 2d 370, 375 n.2 (2002) (emphasis in original). "An insured's reasonable expectation of coverage is merely an interpretative tool used to resolve an ambiguity once it is found to exist and cannot be relied upon to create an ambiguity where none exists." *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1242. As a result, "courts do not evaluate the reasonable expectations doctrine when a policy's language is clear and unambiguous." *Boxed Foods Co.*, 497 F. Supp. 3d at 523.

Importantly, the reasonable expectations doctrine "does not give courts a license to refuse to enforce contract terms based on one party's expectations." *W. Coast Hotel Mgmt., LLC*, 498 F. Supp. 3d at 1242. As discussed above, the Virus Exclusion clearly and unambiguously precludes coverage for Plaintiff's losses. Accordingly, the Court need not address Plaintiff's reasonable expectations under the Policy and Plaintiff's arguments regarding the reasonable expectations doctrine fail. *See Boxed Foods Co.*, 497 F. Supp. 3d at 523 ("Because the Virus Exclusion is unambiguous, the Court does not evaluate the reasonable expectations of the parties." (citation omitted)).

### 4. *Regulatory Estoppel Does Not Apply*

Likewise, regulatory estoppel does not preclude dismissal of the SAC. The SAC alleges that "the Policy provided by Defendant included language that is essentially standardized language adopted from and/or developed by the Insurance Services Office ('ISO')." SAC ¶ 22. The SAC further alleges that "[r]egulatory estoppel bars Defendant from relying on the Virus Exclusion because of its conduct and any associated conduct of the ISO to inappropriately obtain the permission of state insurance commissioners or departments to include the language of the Virus Exclusion in its policies." SAC ¶ 44. Plaintiff does not specifically mention regulatory estoppel in its briefing on Defendant's pending motion, signaling that it is abandoning the regulatory

estoppel argument made in the SAC.  However, Plaintiff's briefing advances the related argument that the Court should look to the drafting history of virus exclusions developed by the ISO in 2005 and 2006, along with how these exclusions were presented to regulators.  *See* ECF No. 43 at 38 & n.12.  Because this appears to be an extension of the regulatory estoppel argument presented in the SAC, the Court addresses it.

California courts reject the regulatory estoppel doctrine.  *Franklin II*, 506 F. Supp. 3d at 859; *see also Lulu's Fashion Lounge LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-1836-MCE-DMC, 2022 WL 1018436, at *6 n.8 (E.D. Cal. Apr. 5, 2022) ("[T]o the extent that [the plaintiff] argues that . . . extrinsic evidence [of regulatory statements made by the defendant] should be allowed even in the absence of ambiguity under the so-called regulatory estoppel doctrine, California courts have declined to recognize that doctrine.").  Moreover, in *Madera*, the district court rejected arguments similar to Plaintiff's arguments regarding regulatory estoppel, explaining that California courts have not adopted the position that regulatory estoppel may "override the plain language of a contract."  *Madera Grp., LLC*, 545 F. Supp. 3d at 839.  The court further explained that "[a]lthough California courts have considered the drafting history of certain exclusions, they did so under circumstances in which the exclusion at issue was susceptible to more than one reasonable interpretation."  *Id.* at 839.  Where, as here, the Virus Exclusion is subject to only one reasonable interpretation, regulatory estoppel is inapplicable, and the Court need not consider extrinsic evidence regarding the ISO.

C.  Whether Further Development of the Factual Record Is Required

Lastly, the Court finds that further development of the factual record is not required to resolve Plaintiff's claims.  Plaintiff argues that the factual record should be developed in two ways.  First, Plaintiff requests that the Court consider evidence related to the development and approval

of virus exclusion language the ISO drafted in 2005 and 2006. Second, Plaintiff requests that the Court allow discovery into issues such as whether COVID-19 causes physical loss or damage, asserting that, in the absence of such discovery, Defendant's motion to dismiss is not "ripe."

In certain circumstances, "[e]ven if a contract is unambiguous, California courts consider extrinsic evidence when the evidence 'is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" *Boxed Foods Co.*, 497 F. Supp. 3d at 524. But "an insurer moving to dismiss based on policy language may 'establish conclusively that this language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint.'" *Id.* For an insurer to do so, "the court must conditionally consider extrinsic evidence 'alleged in the complaint, to determine if it would be relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" *Id.*

The Court has conditionally considered Plaintiff's proposed extrinsic evidence and is unconvinced that it supports Plaintiff's proposed reading of the Virus Exclusion. First, Plaintiff's allegations in the SAC about statements made to regulators in the context of approval of the Virus Exclusion language are vague and conclusory, and barely better developed in its briefing. *See, e.g.*, SAC ¶¶ 33, 44; ECF No. 43 at 39–40. It is far from clear that any statements made to regulators were statements made by Defendant about the specific policy language at issue here, such that Plaintiff's proposed reading of the Virus Exclusion could be considered plausible. Second, the fact that the ISO developed the language in the Virus Exclusion in response to the SARS outbreak in 2002–2004 buttresses, rather than defeats, the Court's conclusion that the exclusion indeed was intended to cover a widespread outbreak of disease. *See Boxed Foods*, 497 F. Supp. 3d at 524–25. Finally, it is difficult to discern why the ISO's purported actions in seeking a revised virus exclusion in 2006 would have any bearing on the interpretation of the Virus

Exclusion language in the policy at issue here, which is purportedly based on the ISO's 2005 version of the exclusion.

In short, Plaintiff's theory, even when viewed in light of its proposed extrinsic evidence, would require the Court to construe the Virus Exclusion language to "mean the exact opposite of its ordinary meaning." *See Boxed Foods Co.*, 497 F. Supp. 3d at 525. Having considered conditionally the extrinsic evidence alleged in the SAC, the Court finds that it would not be relevant to prove Plaintiff's proposed construction of the Virus Exclusion. The Virus Exclusion is unambiguous. Therefore, the Court rejects Plaintiff's request for further development of the factual record on the issue of interpretation of the Virus Exclusion.

Finally, the Court rejects Plaintiff's separate argument that further discovery is required to determine issues such as "whether there exists physical loss or damage." ECF No. 43 at 40–42. This proposed discovery would pertain to whether Plaintiff's losses fall within an affirmative grant of coverage under the Policy. Plaintiff's proposed discovery would have no bearing on the Court's interpretation of the Virus Exclusion, which forms the basis for this ruling. As a result, such discovery is unnecessary to resolve Plaintiff's claims.

IV.   **CONCLUSION**

Plaintiff seeks declaratory relief premised on coverage under the Policy. Because there is no coverage, the claim fails. For the reasons described herein, Defendant's motion to dismiss Plaintiff's Second Amended Complaint is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6). The Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 27th day of May, 2022.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE